■ KORET, INC., Appellant-Respondent, v CHRISTIAN DIOR, S.A., Respondent-Appellant, and CHRISTIAN DIOR-NEW YORK, INC., et al., Respondents.—Judgment, Supreme Court, New York County (Harold Baer, Jr., J.), entered November 14, 1988, which, after a jury trial, awarded plaintiff $250,000 against defendant Christian Dior-New York, Inc. (Dior-New York), for breach of a joint venture agreement, awarded plaintiff $500,000 against defendant Christian Dior, S.A. (Dior-Paris) for tortious interference with a joint venture agreement, and awarded defendant Dior-New York $104,155 against plaintiff, on its second counterclaim, is unanimously modified, on the law and on the facts, to the extent of vacating the award of $500,000 to plaintiff against defendant Dior-Paris, and reducing the award of $104,155 to defendant Dior-New York to $34,458.04, and, except as so modified, otherwise affirmed, without costs.

Koret, Inc. (Koret), which is a New York corporation, has for many years been in the business of designing, manufacturing, distributing, and selling, *inter alia,* ladies' handbags and luggage. Christian Dior, S.A., based in Paris, France, is the owner of "Christian Dior" and "Dior" trademarks, which are licensed for use on high-fashion clothing and accessories. In the United States, Dior-Paris conducted its business through a wholly owned subsidiary, under the name Christian Dior, New York, Inc. Until May 1984, Mr. Jacques Rouet served as managing director of Dior-Paris and chairman of Dior-New York.

In 1972, Koret was licensed to distribute Dior handbags throughout the United States. As a result of a dispute over that license, in 1978, Koret commenced an action against Dior-Paris and others in the United States District Court in the Southern District of New York. Thereafter, in 1980, the Federal litigation was settled when the parties entered into several contracts, which included: (1) a restated license and distributorship agreement, dated January 1, 1980, which extended Koret's handbag license agreement until December 31, 1984, and (2) a written agreement, dated March 3, 1980, which created a 50-50 joint venture between Koret and Dior-New

York, which concerned Koret's development of a Dior luggage carrier, which would be marketed by the Dior companies.

Subsequently, in 1985, Koret commenced the instant action against Dior-Paris, Dior-New York, and others for damages. The complaint alleged, *inter alia,* causes of action for breach of the extended license agreement, tortious interference with the joint venture agreement, and fraud. In response, defendants served an answer which included counterclaims.

The trial resulted in a jury verdict which, *inter alia,* awarded plaintiff $250,000 against defendant Dior-New York for breach of the joint venture agreement, awarded plaintiff $500,000 against defendant Dior-Paris for tortious interference with the joint venture agreement, and awarded defendant Dior-New York $104,155 on its second counterclaim. Plaintiff appeals, and defendant Dior-Paris cross-appeals.

After our review of the record, we find that the award to plaintiff of $500,000 against defendant Dior-Paris for tortious interference with the joint venture agreement between Dior-Paris' wholly owned subsidiary, Dior-New York, and plaintiff should be vacated, since the weight of the evidence clearly indicates that Dior-Paris, as the corporate parent, had a right to interfere with the contract of its subsidiary in order to protect its economic interests *(Felsen v Sol Cafe Mfg. Corp.,* 24 NY2d 682, 687 [1969]). Dior-Paris was no stranger to the joint venture agreement, in view of the fact that Mr. Rouet, who was both managing director of Dior-Paris and chairman of Dior-New York, played a role in negotiation of the joint venture agreement and executed same. It is well established that only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract *(Greyhound Corp. v Commercial Cas. Ins. Co.,* 259 App Div 317, 320-321 [1st Dept 1940]; *Manley v Pandick Press,* 72 AD2d 452, 454 [1st Dept 1980], *appeal dismissed* 49 NY2d 981 [1980]).

Further, we find that the award to defendant Dior-New York of $104,155 against plaintiff, on its second counterclaim for unpaid royalties under the extended handbag license agreement, should be reduced by $69,696.96 to $34,458.04, since the uncontradicted evidence indicates that plaintiff overpaid royalties by $69,696.96, and therefore is entitled to a credit for that amount. Accordingly, we find "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men [and women] to the conclusion reached by the jury on the basis of the evidence presented at trial [that plaintiff owed Dior-New York $104,155]" *(Cohen v Hallmark Cards,* 45 NY2d 493, 499 [1978]).

Based upon our analysis *supra,* we modify the judgment, as indicated.

We have considered the other contentions of the parties, and find them to be without merit. Concur—Kupferman, J. P., Ross, Asch, Kassal and Wallach, JJ.